### In re LAKE SHORE ATHLETIC CLUB. LAKE SHORE ATHLETIC CLUB MEMBERS' COMMITTEE v. KEIG.

No. 6977.

Circuit Court of Appeals, Seventh Circuit.

Nov. 6, 1939.

Rehearing Denied Dec. 5, 1939.

Charles E. McGuire, of Chicago, Ill., for appellant.

Charles S. Deneen, Roy Massena, and Donald N. Schaffer, all of Chicago, Ill., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

Appellant, a committee known as the Lake Shore Athletic Club Members' Committee, filed a claim against appellee, trustee of the Lake Shore Athletic Club, debtor, in a proceeding for its reorganization, under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. The amount of the claim was $8,798.61, of which $5,049.66 was designated as the amount of principal due on loans, and $3,748.95 as interest due on such loans to January 31, 1938. The claim and objections of the trustee thereto were heard by a Special Master, who filed a report recommending that $4,122.02 of the principal amount of the claim be allowed as a claim in Class 1, to be paid in cash, but recommended the disallowance of all interest. The District Court, by order of May 24, 1939, confirmed and approved the Master's report, and from that order comes the instant appeal.

The only part of the Master's report here involved, however, is that denying interest.

In 1931, the debtor was in financial difficulties, and its members undertook to develop a plan of reorganization. Certain members of the debtor subscribed and contributed to a fund for that purpose, which was placed in the hands of and at the disposal of appellant. Appellant, from time to time, from the funds thus placed in its hands, made loans to the debtor, and there were assigned to appellant, accounts re-

ceivable of the debtor, as security for the payment of loans so made. · The debtor was permitted to collect the assigned accounts receivable, and as collections were made from time to time, payments were made to appellant by the debtor on account of its indebtedness. Said indebtedness was represented by three promissory notes dated October 10, 1931, payable on demand and bearing interest at the rate of 6% per annum, after date.

The efforts of the club members to reorganize did not meet with success, and on October 13, 1931, a receiver was appointed in foreclosure proceedings instituted against the debtor in the Superior Court of Cook County. At that time there remained due from the debtor to appellant, a balance of $15,604.77, on account of the loans theretofore made, which indebtedness was secured by an assignment of accounts receivable.

The receiver proceeded to collect the accounts owing the debtor, including those assigned to appellant as security. It soon developed that there was not sufficient money to continue the operation of the debtor unless the money realized from the accounts receivable, which had been assigned as security for appellant's loan, be utilized in the debtor's operation. On October 27, 1931, there was due and owing upon the notes held by appellant, the sum of $15,600, and the receiver had collected and had on hand from the secured accounts, the sum of $12,300. At that time appellant made a proposal to the receiver, the material portions of which are as follows:

"We, therefore, propose and offer to make loans to you as Receiver for the Lake Shore Athletic Club from this fund from time to time as you may require such loans, * * *

"To facilitate the handling of such loans and the operation thereunder, we agree that at any time, and from time to time, as you require cash, you may use the money collected upon assigned accounts, provided that at that time you will assign or set aside new accounts receivable in the ratio set forth above for the money at such times used by you as Receiver.

"At the present time you probably find yourself with no cash available for working funds by reason of the fact that practically all cash now collected and being collected by you represents money due to this Committee by virtue of the assigned accounts. We intend, by this order and proposal, that this condition will be remedied, and in addition, we expect that gradually the loans from this Committee to the Club and to you will be liquidated. * * * *"

The receiver presented this proposal to the Superior Court of Cook County and asked that he be given authority to accept appellant's offer to "procure loans under and in accordance with the terms of said offer and to pledge accounts receivable in accordance with the terms of the offer." On November 6, 1931, an order was entered by the State Court authorizing the acceptance of appellant's offer of October 27, 1931, which order contained the following proviso: " * * * without prejudice to the rights of the Receiver and/or of this Court to determine or pass upon or object to the validity of any assignment made by the Defendant, Lake Shore Athletic Club, to the said Members' Committee prior to the appointment of the Receiver for said Defendant, Lake Shore Athletic Club, and the rights of said Members' Committee shall not be enlarged by any action taken as the result of this order over the rights of said Committee as they existed at the time of the appointment of said Receiver."

The receiver remained in the active charge of the debtor until October 7, 1935, when he was succeeded by appellee as trustee in the corporate reorganization proceeding. The situation at the time of the appointment of the receiver, the methods employed by him, as well as his successor trustee, in the collection of the accounts receivable assigned as security for money due appellant, the substitution of other collateral therefor, and the use of such funds, are aptly described in the master's report, thus:

"At the time of the appointment of the receiver of the debtor's property in the Superior Court of Cook County, the committee held as security for the loans which it had made to the debtor corporation certain accounts receivable in an amount in excess of the balance due on the loans to the club. Thereafter, under an arrangement between the committee and the receiver, as collections were made on these accounts, the money was retained by the receiver and used for the purpose of operating the property of the debtor corporation, although he did make some payments on account of the indebtedness due the committee. Thereafter, he pledged

new accounts receivable as they accrued, and after collecting on those accounts, also retained that money. More than sufficient was collected by the receiver from the accounts which had been assigned prior to his appointment to pay the loans in full, and after he surrendered possession of the property of the debtor to the trustee herein, the trustee likewise thereafter collected either from the accounts still remaining unpaid which had been assigned by the club itself, or those which had been assigned by the receiver, more than sufficient to pay the debt."

The claim in controversy, filed in the corporate reorganization proceeding February 8, 1938, contains a recitation of the facts substantially as we have given them. Inasmuch as the primary, and perhaps controlling, contention is predicated upon the theory that the claim is based solely upon appellant's loans to the receiver rather than upon the notes which appellant held at the time the receiver was appointed, it seems pertinent to call attention to some of the further allegations contained in the claim. Paragraph 6 of the claim states: "6.—That all of said notes and loans bear interest at the rate of six per cent (6%) per annum after date, in accordance with the tenor of said notes, a copy of one of said notes being attached hereto and made a part hereof and all of said notes being of like tenor and effect except that they differ as to amounts and dates."

Paragraphs 10, 11, and 12 are as follows:

"10.—That by and under such arrangement the Receiver borrowed and continued to use the funds of this Committee during the period of the receivership and secured the payment of all moneys due to these claimants by the assignment of good Accounts Receivable and thereby became and was indebted, as Receiver, to this Committee for the amount of such loans.

"11.—That the total principal of said loans to the Receiver at the commencement of said receivership amounted to Fifteen Thousand Six Hundred Four Dollars and Seventy-seven Cents ($15,604.77), but that from time to time, through various credits, said loans have been reduced so that on October 7, 1935, when the Trustee was appointed in this cause and the Receiver made delivery of all of the assets in his possession to said Trustee, there remained a balance due to these claimants on said loans of Five Thousand Five Hundred Seventy-four Dollars and Sixty-six Cents ($5,574.66), principal amount.

"12.—That during the period of trusteeship, by various credits, said loans have been reduced to the sum of Five Thousand Forty-nine Dollars and Sixty-six Cents ($5,049.66), principal amount. * * *"

Then follows an itemized statement "of the balances on said loans and interest." In one column are set forth the various amounts due upon principal from the time of the appointment of the receiver to January 31, 1938, and in another column the amounts due as interest at various dates during the same period. During that time the principal indebtedness was reduced from $15,604.77 to $5049.66, and the total interest shown to have accrued during the same period amounted to $3,748.95. There was attached to the claim a copy of one of the promissory notes, and also a copy of the assignment of the accounts receivable executed for the purpose of securing the payment of said notes.

The primary question, the answer to which is largely, if not entirely determinative of this appeal, is: Does the claim state a cause of action based upon the notes held by appellant at the time of the appointment of the receiver, as is argued by appellant, or is the claim based upon a new agreement by which loans were made by appellant to the receiver after the latter's appointment? The importance of the answer to this question arises from the fact that if the claim is predicated upon the notes, appellant is entitled to recover interest as is provided by said notes—while on the other hand, if the claim is based upon a subsequent agreement to loan money to the receiver, the appellant is not entitled to recover interest, under a theory of law not disputed by appellant, that a receiver has no authority to pay, or become obligated to pay interest on money borrowed by him, unless authorized by the court so to do. In the instant case, no authority was obtained from the State Court to pay interest.

After reading and studying the claim, we do not agree with the contention of either party that it plainly supports their respective theories. In fact, the claim is confusing, and in some respects, contradictory in its terms. Paragraphs 10, 11, and 12, heretofore quoted, lend support to appellee's theory. Whatever support is

there found in appellee's favor, however, is, we think, more than offset by other statements contained in the claim. For instance, if appellant was relying upon loans made to the receiver, it was useless, so far as we are able to discern, to recite in detail what had occurred prior to his appointment. The allegation in Paragraph 6, heretofore quoted, with reference to the notes, indicates a reliance upon the notes rather than loans made to the receiver. Also, the claim clearly discloses that there was due appellant the sum of $15,604.77 at the time the receiver was appointed. Surely it can not be contended that this represented loans to the receiver which must have been made, if at all, subsequent to that time. Also, there was attached to the claim a copy of one of the notes and a copy of the assignment of accounts receivable for the purpose of securing the same, all executed prior to the time of the receiver's appointment. The attaching to the claim of these exhibits and making them a part thereof, is wholly inconsistent with the theory that the claim was based upon loans subsequently made. We are of the opinion that from a consideration of the claim alone, it must be held that it was based upon the notes rather than upon loans made to the receiver subsequent to his appointment.

We do not think, however, in deciding this question, we are limited to the claim itself, and, when we take into consideration that which followed the filing of the claim, any doubt which we have concerning our interpretation of the claim is immediately dispelled. Appellee, as trustee, filed numerous objections to the claim, all of which were directed at its validity, the principal contention being that the notes executed by the debtor, payable to appellant, and the accounts receivable assigned as security therefor, were executed without authority, and void. Not even an intimation is found in these objections that the claim is based upon the loans made to the receiver. Referring to a provision in the State Court decree authorizing the receiver to use appellant's money, there occurs this significant statement: "That by virtue of the terms of said orders the rights of the Members' Committee were not enlarged by the entry of said order or by any acts subsequent to the entry of said order, but that the supposed rights of the Members' Committee must be determined as they existed prior to the institution of the said State Court proceedings for the appointment of a Receiver for the Club."

It is apparent that at that time, appellee was insisting that the rights of appellant be determined as they existed prior to the appointment of the receiver in the State Court, while now he is insisting that the rights of appellant be determined in accordance with what happened subsequent thereto. Also, in the objections predicated upon the invalidity of the notes, it is to be noted that appellee made no distinction between principal and interest. Another pertinent matter, inconsistent with appellee's theory, is the fact that the receiver, and subsequently the trustee, made payments upon the indebtedness existing at the time of the appointment of the receiver, and actually reduced the same from the amount of $15,604.77 to $5,574.66, as of October 7, 1935.

While the order of the State Court authorized the receiver to borrow money from appellant, we doubt if the acts of the parties constituted a "loan and borrowing" as those terms are commonly used and understood. No money was actually advanced by the appellant to the receiver or to the trustee. They merely collected, from collateral given to secure the original indebtedness, money which appellant had a right to have applied upon the same, but instead the receiver and trustee were permitted the use of such money. We are unable to see how that character of transaction could be said to affect the original indebtedness until the money in the hands of the receiver or trustee was actually turned over to appellant and applied upon such indebtedness. As stated, some of it was, and the indebtedness was reduced to that extent.

Another matter inconsistent with appellee's present contention arises from the fact that on October 7, 1935, a report was made by appellee in the reorganization proceeding to which was attached an auditor's report, in which it is stated: "Notes payable to Members' Committee and accrued interest thereon, $8,574.66, representing the residual of obligations incurred by the Club during October, 1931, immediately prior to the date of receivership, which were subsequently assumed by the receiver, all accounts receivable of the Club have been pledged as security for the payment of this obligation. * * *"

If it be held that the claim was based upon loans made to the receiver and trus-

tee, the question naturally arises as to what became of the notes held by appellant at the time the receiver was appointed. Certainly, appellant could not maintain a claim or action upon both theories, when, as a matter of fact, the money which the receiver was permitted to use was, in effect, the same as that evidenced by the notes. We are unable to conceive how and in what manner the obligation arising from the notes has been discharged. Appellee's argument that there is nothing in the record to show that the notes are in existence, is not tenable. As already stated, appellee, in its objections to the claim, attacked the validity of the notes and not their non-existence. The notes were described in the claim, as well as in the auditor's report attached to and made a part of a report filed in court by the appellee.

The record plainly discloses that the question before this court was never raised until after the report of the Master. No issue was raised by appellant's claim, and appellee's objections thereto with which we are now confronted. As already stated, it seemed to be assumed by all parties, and it is at least a fair inference, conceded by all parties, that the only question thus raised had to do with the invalidity of the notes. A reading of the Master's report does not convince us that he found or intended to find facts inconsistent with the conclusion we have reached. In what is classified by the Master as his "conclusions of law" is this statement: " * * * the committee was, in effect, loaning money to the receiver, and in my opinion the same thing is true with respect to collections made by the trustee herein."

The court, in approving and confirming the Master's report, evidently accepted this as a finding by the Master and, for that reason, was of the opinion that the claim was based upon loans made to the receiver, and that appellant, therefore, was not entitled to interest. In this, we think, the court was in error. As stated, the claim and objections thereto raised no such issue before the Master, and the Master evidently regarded this statement as a conclusion rather than a finding. In fact, we think it was such, and an erroneous conclusion as well.

We have not discussed the acts and conduct of the parties with a view of disclosing an estoppel against appellee; and whether such doctrine could be invoked,

we need not decide. We think, however, such matters may properly be considered in reaching our conclusion, that appellant's claim was based upon the indebtedness evidenced by the notes bearing interest at the rate of 6% per annum.

 The record discloses, without dispute, that there was collected from the accounts receivable, assigned to secure the indebtedness evidenced by such notes and from other accounts receivable, substituted therefor, more than sufficient to discharge such indebtedness in full, including interest. It is our conclusion, under such circumstances, that the lien originally acquired by appellant upon the funds collected from the accounts receivable, first assigned, attached to the funds collected from those substituted therefor, and that appellant is entitled to have its claim, principal and interest, paid therefrom.

The order of the District Court is reversed, with directions to proceed in accordance with the views herein expressed.